**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOSEPH R. O'DELL, III,
Plaintiff-Appellee,

v.

J. D. NETHERLAND, Sued in his
official capacity as Warden at
Mecklenburg Correctional Center,
Defendant-Appellant.

No. 96-7564

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-96-800-3)

Argued: April 10, 1997

Decided: May 5, 1997

Before RUSSELL and LUTTIG, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Reversed by published per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Mark Ralph Davis, Senior Assistant Attorney General,
Criminal Law Division, OFFICE OF THE ATTORNEY GENERAL,
Richmond, Virginia, for Appellant. Steven David Rosenfield, Char-
lottesville, Virginia, for Appellee. **ON BRIEF:** James S. Gilmore, III,
Attorney General, Pamela A. Sargent, Assistant Attorney General,

Criminal Law Division, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellant. Mary C. Bauer, ACLU OF VIR-GINIA FOUNDATION, Richmond, Virginia, for Appellee.

_____

**OPINION**

PER CURIAM:

On October 11, 1996, the federal district court for the Eastern District of Virginia (Spencer, J.), enjoined the Commonwealth of Virginia to allow death row inmate Joseph Roger O'Dell to have contact visits with Lori Urs, a paralegal at a law firm representing O'Dell and O'Dell's wife, in her capacity as a paralegal. The district court's injunction was thereafter stayed pending the present appeal, in which O'Dell argues that the Commonwealth of Virginia has denied him his Sixth Amendment and Fourteenth Amendment right of access to courts by denying him contact visits with his paralegal/wife, in her capacity as his paralegal. On April 10, 1997, we heard oral argument from attorneys for the Commonwealth and counsel for O'Dell on this issue.

For the reasons recited in Judge Luttig's opinion of October 18, 1996, staying the district court's injunction in this matter pending appeal, which opinion we hereby adopt as our own, we conclude that O'Dell's Sixth Amendment and Fourteenth Amendment right of access to the courts is not abridged by the Commonwealth's refusal to allow him to have contact visits with his paralegal/wife, Lori Urs.

The judgment of the district court is reversed and the case is remanded with instructions to enter judgment for appellant Netherland. A copy of Judge Luttig's order of October 18, 1996, is attached.

REVERSED

2

FILED: October 18, 1996

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

(CA-96-800-CV-3)

No. 96-7564

_____

JOSEPH ROGER O'DELL, III,
Plaintiff-Appellee,

    versus

J. D. NETHERLAND, Sued in his official
capacity as Warden at Mecklenberg Correctional
Center,

Defendant-Appellant.

_____

**ORDER**

On Friday, October 11, 1996, the district court for the Eastern Dis-
trict of Virginia entered a permanent injunction on behalf of inmate
Joseph Roger O'Dell against the Commonwealth of Virginia, enjoin-
ing the Commonwealth to allow "legal contact visits" between O'Dell
and Ms. Urs, a paralegal/investigator on O'Dell's legal defense team
and purportedly O'Dell's wife "under the laws of the Cherokee
nation."* According to the parties, a "contact visit" is one in which
Urs is permitted to meet with O'Dell alone, in a room without any
partitions separating the two from each other, and outside the immedi-

_____

*The district court accepted, and for purposes of this application I do
as well, that the recent designation of Urs, a second-year law student at
the New England School of Law, as a member of the legal team is not,
as the district said, "a sham for the convenience of Ms. Urs and O'Dell."

3

ate presence of prison officials. A "contact visit," in other words, is one in which the two persons are allowed physical contact, albeit within sight of prison officials. "Non-contact visits," on the other hand, as the name implies, are meetings in which the prisoner is allowed to communicate with another individual, but is not allowed physical contact with that person. "Non-contact visits" include face-to-face meetings in which the parties speak through a glass or screen partition, telephone conversations, and written communications by mail or hand-delivery.

Under the rules imposed by the Commonwealth's prison authorities, O'Dell is permitted the full range of "non-contact visits" with his counsel and their assistants, in addition to the full range of "contact visits" with his counsel and all of their assistants, except Urs. Thus, O'Dell is allowed to meet face-to-face with any of his six attorneys (four of whom live in Virginia) or paralegals -- including Urs -- and discuss through a glass or screen partition any matter he wishes. Additionally, he is allowed to discuss over the telephone any matter with any of his attorneys or paralegals, including Urs. And he is permitted any and all forms of written communications with any of his attorneys or paralegals, including Urs. None of these "non-contact visits" is currently monitored by prison officials. O'Dell, therefore, enjoys complete confidentiality in these communications.

The only limitation on O'Dell's access to his counsel or their assistants is that O'Dell is not permitted to meet face-to-face and in person, unseparated by partition, with Urs, when she is acting in her capacity as one of O'Dell's paralegals. (O'Dell is allowed periodic spousal visits with his wife, in accordance with prison custom and policy.). The prison's limitation on O'Dell's "contact visits" from Urs -- a limitation that extends to the spouses of all death-row inmates -- was imposed because, in the experienced judgment of the State's prison authorities and administrators, Urs, as O'Dell's wife, represents a security risk to O'Dell, herself, and third persons as a consequence of the circumstances in which O'Dell now finds himself.

Notwithstanding the array of contacts permitted O'Dell between his attorneys, his paralegals, and even Urs, the district court ordered the Commonwealth to allow O'Dell even the "legal contact visits"

4

with Urs that had been prohibited him in the interests of prison security.

In anticipation of the first "legal contact visits" between Urs and O'Dell pursuant to the district court's injunction, which presumably occurred on Tuesday and Wednesday of this week, October 15-16, the Commonwealth on Tuesday morning filed papers with me as a single Circuit Judge pursuant to Fed. R. App. P. 8, applying for a stay of the district court's injunction. Thereafter, I directed O'Dell to file a responsive pleading and the Commonwealth to file a reply to O'Dell's response. Having carefully considered the submissions of both parties and the applicable authorities, I hereby grant the stay of injunction requested by the Commonwealth.

In enjoining the Commonwealth to allow O'Dell "contact visits" with Urs whenever "authorized by O'Dell's lawyers," the district court reasoned that O'Dell was constitutionally entitled under the Sixth Amendment to "contact visits" with a paralegal, and thus that O'Dell was not only likely, but certain, to succeed on the merits of his claimed right to such visits with Urs. The district court further reasoned that, in the absence of the injunction, O'Dell would suffer substantial and irreparable harm in the form of denied access to the courts. The district court erred in both respects.

The district court cited no authority, and I am aware of none, holding that the Sixth Amendment provides O'Dell a right to a "contact visit" with a member of his legal team -- attorney or paralegal. In the only even tangentially relevant case cited in support of such a right, Procunier v. Martinez, 416 U.S. 396, 419 (1974), the Supreme Court invalidated, as violative of an inmate's right of access to the courts, a prison regulation banning all interviews between inmates and paralegals. Procunier, which has since been overruled in part, Thornburgh v. Abbott, 490 U.S. 401, 414 (1989), cannot possibly be read so as to afford O'Dell the constitutional right for which he argues. That case cannot even be read to require "contact visits" from a paralegal, much less "contact visits" from a particular paralegal, especially where, as here, the State not only articulates a perfectly reasonable justification for preventing visits by that individual, but also offers a panoply of alternative means by which the prisoner may communicate with his

5

attorneys, other paralegals, and, indeed, even with the paralegal for whom "contact visits" are disallowed.

Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show "actual injury" to "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis v. Casey, 116 S. Ct. 2174, 2182 (1996). Because avenues are fully open for O'Dell to obtain the full legal assistance of his professional team of lawyers, and even the aid of that team's assistants, including Urs herself, O'Dell simply cannot make such a showing. Indeed, I can discern no basis whatever for concluding that the prison's limitation on "contact visits" from Urs hinders in any way O'Dell's communication with his defense team or otherwise impairs his ability to access the courts for available legal redress. O'Dell's only contention otherwise is that he needs the "cloak of confidentiality" with respect to his visits with Urs that comes with "contact visits," but not with "non-contact visits." As noted, however, the State has represented -- and O'Dell does not challenge -- that none of the variety of legal communications between O'Dell and his attorneys, their paralegals, or, in particular, Urs, is being monitored by State officials. Nor is there any reason in the record to expect that they would be monitored.

For the same reasons that O'Dell cannot establish that his right of access to the courts likely has been burdened, he fails to show that the balance of harms favors the injunction entered by the district court. Given the host of alternative means for O'Dell to communicate with his counsel, their assistants and even Urs, O'Dell's cognizable Sixth Amendment interest in "contact visits" with Urs is negligible. (Of course, that interest is now even less substantial than it might otherwise have been, because Urs has presumably already met with O'Dell some twelve full hours on Tuesday and Wednesday of this week.). In contrast, the State's interest in prison security and safety in general is concededly substantial and continuing. The director of the Virginia Department of Corrections testified before the district court that physical contact between a condemned man and a person who is emotionally attached to him and desperately attempting to save his life creates a significant danger to the safety of the staff and occupants of the prison as well as to the prisoner himself. The director cited several instances in which wives, girlfriends, or lawyers of death row inmates

6

have fallen in love with inmates and smuggled weapons or illegal narcotics into the prison or otherwise attempted to help the prisoners escape. The State's interest, indeed, is particularly compelling in this case because Urs has previously violated the prison's security regulations. As the district court was made aware, Urs has, in the past, abused her position as legal assistant to O'Dell by violating prison regulations in order to foster her personal relationship with O'Dell. In 1994, while working with Centurion Ministries, Urs was caught attempting to circumvent prison rules by sending O'Dell love letters disguised as legal communications. In fact, in one of those letters, in a passage that as yet is not understood, Urs wrote:"I will one day check the gun thing out but I am a little scared," and "[p]ut it on hold, just for now -- ok baby?" In light of the State's significant interest in the security of its prisons and Urs' previous disregard for prison regulations promulgated to further that security, it cannot be gainsaid that the State's interests outweigh O'Dell's negligible interest in "contact visits" from Urs.

At bottom, the district court accorded little, if indeed any, deference to the prison warden's reasonable judgment that, in the interest of prison security, O'Dell should not be allowed"contact visits" from Urs. Essentially, the district court subjected the State's informed security judgment to the very kind of "inflexible strict-scrutiny analysis," which the Supreme Court has repeatedly held impermissibly hamstrings prison administrators in their efforts"to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." Casey, 116 S. Ct. at 2185 (quoting Jones v. North Carolina Labor Union, Inc. , 433 U.S. 119, 128 (1977)). As we have repeatedly held, on instruction from the Supreme Court, it is not for the federal courts to so micromanage the Nation's prisons. Taylor v. Freeman, 34 F.3d 266 (4th Cir. 1994).

Accordingly, the injunction entered by the district court is hereby stayed pending appeal.

Entered at the direction of Judge Luttig.

> For the Court
>
> /s/ Patricia S. Connor
>
> Clerk

7