Demetric Gray PEARSON, # 385–960,

v.

Stuart O. SIMMS, et al.

No. CIV.A. RDB–02–3647.

United States District Court,
D. Maryland.

Dec. 11, 2003.

Demetric Gray Pearson, RCI, Jessup, MD, pro se.

Gloria Wilson Shelton, State of Maryland Office of Attorney General, Baltimore, MD, J. Joseph Curran, Jr., Baltimore, MD, for Stuart O. Simms.

Stephanie Lane Weber, State of Maryland Office of Attorney General, Baltimore, MD, for Captain Neder, Steven Roach, Jeff Nimes, David Lancaster, Steven Zollner and William Sondervan.

## *MEMORANDUM*

BENNETT, District Judge.

On November 8, 2002, plaintiff, a state prisoner currently incarcerated at the Maryland House of Correction–Annex (MHC–X), filed the instant civil rights action, pursuant to 42 U.S.C. § 1983. (Paper No. 1). By way of Amended Complaint, plaintiff alleges that the defendants have denied him access to the courts in that they have: (1) tampered with his legal mail; (2) the Honorable Judge Long failed to grant him pauper status in a state court proceeding; and (3) he is not provided adequate "tools" for accessing the Court due to his poverty.[1] Plaintiff also alleges that he has been retaliated against for filing administrative procedures. Lastly, he alleges that he has been denied access to state run programs in violation of the Rehabilitation Act of 1973 and Americans with Disabilities Act of 1990.[2] Plaintiff seeks unspecified damages and injunctive relief. (Paper Nos. 1 and 3).

Defendants, Stuart O. Simms, Captain Joseph Neder, Lt. David Lancaster, Jeffrey Nines, Steven F. Roach, and Steven J. Zollner have filed Motions to Dismiss, or in the Alternative, Motions for Summary Judgment, which shall be treated as Mo-

1. To the extent this claim can be construed as plaintiff alleging that he has been denied sufficient stationary, this claim has previously been dismissed by the Court. *See Pearson v. Saar,* Civil Action No. RDB–03–1495 (D.Md).

2. This claim is presently before the Court in *Pearson v. Saar,* PJM–03–517 (D.Md.) and will not be considered here.

tions for Summary Judgment. (Paper No. 13 and 25). Plaintiff has filed a response. (Paper Nos. 27, 29 and 30).[3] No hearing is necessary. *See* Local Rule 105.6 (D.Md.).

Plaintiff states that on October 17, 2002, the Honorable Daniel Long, a state court judge, denied plaintiff's request for judicial review due to plaintiff's poverty. He further states that "the records of these cases were not transmitted to the Court." (Paper No. 3). Plaintiff further claims that he has been denied his right to appeal decisions of the Inmate Grievance Office (IGO) and decisions of the Administrative Law Judge (ALJ), presumably due to his poverty and issues surrounding his outgoing mail.

Plaintiff claims that he has been denied meaningful access to the courts due to the restrictions on his mailing privileges. He also alleges that has been forced to disclose his confidential outgoing legal correspondence. (*Id.*) He generally claims that his mail has been tampered with and that he has been retaliated for filing administrative remedies. (*Id.*)

The defendants state that while housed at the Western Correctional Institution, (WCI), plaintiff filed numerous Requests for Administrative Remedies (ARP) concerning his legal mail. (Paper No. 13, Ex. 2). In his ARPs, plaintiff alleged that from April 1, 2000 through September, 2000 his legal mail was mishandled, delayed or otherwise tampered with. Division of Correction (DOC) policy requires that indigent inmates, desiring to mail items, complete a money voucher which is then signed by the Housing Unit Lieutenant. (*Id.*, Ex. 3, p. 7–9). In the instant case, Lt. Lancaster signed vouchers for *nine pieces of legal mail for plaintiff* and the mail was processed. (*Id.*) Plaintiff filed an ARP on August 20, 2000 alleging that Lt. Thomas held his legal mail for nine days. (*Id.*, Ex. 3, p. 1). After investigation, it was determined that plaintiff's certified mail was delayed due to certain issues with the address on two of the letters and that the processing date fell on a state holiday. (*Id.*, p. 4).

Copies of plaintiff's certified mail from August of 2000 reveal the following:

1. On August 1, 2000, plaintiff submitted a letter to be mailed, certified, to the Maryland Parole Commission. It was mailed on August 3, 2000;

2. On August 5, 2000, plaintiff submitted a letter to be mailed, certified, to the Office of the Public Defender in Cumberland, Maryland. It was mailed August 10, 2000;

3. On August 5, 2000, plaintiff submitted a letter to be mailed, certified, to the Office of the Public Defender/Appellate Division. It was mailed on August 10, 2000;

4. On August 3, 2000, plaintiff submitted a letter to be mailed, certified, to the Clerk of the Court of Appeals. It was mailed August 10, 2000;

5. On August 3, 2000, plaintiff submitted a letter to be mailed, certified, to the Office of the Public Defender/Carole

3. Paper No. 27 is an opposition to defendants' dispositive motions which also contains a request for a writ of habeas corpus ad testificandum. To the extent that plaintiff wishes that he be produced before this Court to testify in this matter, his Motion shall be denied as no hearing is necessary to resolve the case.

Paper Nos. 29 and 30 are stylized as Motions to Enter Additional Information. To the extent plaintiff wishes to amend the factual allegations of his complaint, the motions, received long after defendants' dispositive motions were filed, shall be denied. To the extent that the motions can be construed as supplements to plaintiff's opposition to defendants' dispositive motions, same shall be considered by the Court.

Chance. It was mailed on August 10, 2000;

6. On August 5, 2000, plaintiff submitted a letter to be mailed, certified, to the Office of the Public Defender/collateral Review division. It was mailed August 10, 2000;

7. On August 5, 2000, plaintiff submitted a letter to be mailed, certified, to the Office of the Public Defender/Stephen E. Harris. It was mailed on August 10, 2000;

8. On August 5, 2000, plaintiff submitted a letter to be mailed, certified, to the Office of the Public Defender/Milton Baxley, Jr. It was mailed August 10, 2000;

9. On August 9, 2000 plaintiff submitted a letter to be mailed, certified, the Maryland State Police. It appears to have been mailed August 11, 2000.

(Paper No. 13, Ex., 3, p. 12–20).

Plaintiff also filed an ARP in June of 2001 complaining that he was forced to show James Nimes a letter from plaintiff's counsel concerning a court date in order to have his outgoing legal mail accepted for mailing. (*Id.*, Ex. 2, p. 9). He also filed ARPs complaining that other mail was simply not being mailed out of the institution. (*Id.*, p. 12–14).

From September 19, 2002 to January 31, 2003, plaintiff was housed at Roxbury Correctional Institution (RCI). He again filed numerous ARPs stating that his mail was not being processed properly. (*Id.*, Ex. 4, p. 1–4 and Ex. 5). An investigation revealed that the staff was in compliance with processing indigent mail. (*Id.*, Ex. 6).

On October 17, 2002, plaintiff filed a request with the Circuit Court for Somerset County requesting that the court waive filing fees for numerous cases plaintiff had filed. (*Id.*, Ex. 8). Plaintiff's request was denied by the state court judge who noted that plaintiff had previously filed cases in that court, two of which were still pending. (*Id.*).

Fed.R.Civ.P. 56(c) provides that

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor. *See Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir.1997)(*citing Anderson*, 477 U.S. at 255, 106 S.Ct. 2505). The non-moving party may not rest upon mere allegations or denials in his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir. 1991). The "mere existence of a scintilla of evidence in support of... plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322–323, 106 S.Ct. 2548. Therefore, on those issues on

which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Plaintiff's claims regarding his ability to mail items bears upon his constitutional right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). While prisoners have a constitutionally protected right of access to the courts,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey,* 518 U.S. 343, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606, (1996). To state a constitutional claim for denial of access to the courts, a prisoner must show that the alleged shortcomings "hindered his efforts to pursue a legal claim." *Id.,* at 351, 116 S.Ct. 2174. Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith,* 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Hudspeth v. Figgins,* 584 F.2d 1345 (4th Cir. 1978), *cert. denied* 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979). In *Lewis v. Casey,* the Supreme Court clarified the *Bounds* decision by finding that a deprivation of an inmate's right of access to the courts is actionable but only where the inmate is able to demonstrate actual injury from such deprivation. *Lewis,* 518 U.S. at 349, 116 S.Ct. 2174. The actual injury requirement, however, is not satisfied by just any type of frustrated legal claim. *Id.* at 354, 116 S.Ct. 2174. Rather, the *Lewis* Court concluded that *Bounds v. Smith, supra,* stood essentially for the proposition that inmates are not guaranteed the ability to litigate every imaginable claim they can perceive, but that they have the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 354, 116 S.Ct. 2174. Additionally, the Court found that "[b]ecause *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense." *Id.* at 351, 116 S.Ct. 2174; *see also O'Dell v. Netherland,* 112 F.3d 773, 776 (4th Cir.1997)(inmate must demonstrate that inability to gain access to legal materials resulted in "actual injury" to his "capacity of bringing contemplated challenges to sentences or conditions of confinement before the courts"). Moreover, to state a claim that the delay or nondelivery of legal mail deprived him of meaningful access to the courts, a prisoner must allege adverse consequence resulting from the delay or nondelivery. *White v. White,* 886 F.2d 721, 724 (4th Cir.1989).

Certainly, the deliberate interference with the posting of some types of outgoing mail by prison staff may state a claim of constitutional dimension. However, occasional incidents of delay or nondelivery of mail do not rise to a constitutional level. *Gardner v. Howard,* 109 F.3d 427, 430–31 (8th Cir.1997); *Smith v. Maschner,* 899 F.2d 940, 944 (10th Cir.1990). Nor does mere negligent interference by

prison officials with an inmate's right to access to the courts state a cause of action under § 1983. *Pink v. Lester,* 52 F.3d 73, 75–76 (4th Cir.1995).

Here, even where plaintiff has demonstrated up to a week long delay in the posting of certain legal mail there is no evidence that defendants acted so as to interfere with the posting of the plaintiff's mail. Further, plaintiff has advised of no actual injury or specific harm, sufficient to support a claim of denial of access to the court, which he has suffered as a result of the allegedly alleged delay or mishandling of his mail. The only evidence Pearson offers of injury is a conclusory statement that he was unable to properly prosecute his cases. Plaintiff has not alleged, much less demonstrated that the materials he sought to mail were related to his underlying conviction or to the conditions of his confinement. Without greater specificity, plaintiff's claim fails. *See Brewer v. Wilkinson,* 3 F.3d 816, 825 (5th Cir.1993), *cert. denied,* 510 U.S. 1123, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994).

Plaintiff also alleges that defendants harassed plaintiff and retaliated against him due to his filing administrative grievances. (Paper No. 3). Plaintiff has provided no specific factual allegations in support of this claim. In order to sustain a claim based on retaliation, a plaintiff "must allege *either* that the retaliatory act was taken in response to the exercise of a constitutionally protected right *or* that the act itself violated such a right." *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994)(emphasis supplied). Plaintiff does not have a constitutional right to participate in grievance procedures. *Id.* To the extent that plaintiff's complaint can be construed as alleging that the retaliatory action, delay of his outgoing legal mail, was taken in response to plaintiff's filing cases in court or in an effort to thwart his ability to access the courts, his claim still fails as he has failed to show the requisite adversity. "[A] showing of adversity is essential to any retaliation claim." *ACLU of Maryland v. Wicomico County,* 999 F.2d 780, 785 (4th Cir.1993); *Scott v. Kelly,* 107 F.Supp.2d 706, 709 (E.D.Va.2000). As noted, *supra,* plaintiff has failed to show how the alleged retaliatory conduct adversely impacted his access to the courts.

As to plaintiff's claim regarding the denial of his request to proceed without prepayment of filing fees in the state circuit court, he has failed to allege how any of the named defendants were involved with such independent action of a state court judge. Accordingly, without reviewing the claim any further, plaintiff's claim fails.

Lastly, the Court notes that as to defendants Simms and Sondervan, plaintiff has alleged no specific conduct on their part bearing on any of the claims he has raised in the instant case. Therefore, it would appear that plaintiff is attempting to hold defendants Simms and Sondervan liable based on a theory of respondeat superior. The doctrine of respondeat superior does not apply in actions under 42 U.S.C. § 1983. *Monell v. New York Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In order for supervisory liability to exist in this type of action it must be established:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an

affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir.1994) (citations omitted); *see also Slakan v. Porter,* 737 F.2d 368, 373 (4th Cir. 1984).

■ Deliberate indifference is more than negligence. As one court explained:

Generally, a failure to supervise gives rise to a § 1983 liability, however, only in those situations in which there is a history of widespread abuse. Only then may knowledge be imputed to the supervisory personnel. A single act or isolated incident are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability.

*Wellington v. Daniels,* 717 F.2d 932, 936 (4th Cir.1983) (citations and footnote omitted). The plaintiff has alleged no facts which would support such a finding.

In light of the foregoing, the undersigned concludes that defendants' Motions for Summary Judgment shall be granted and judgment shall be entered in their favor and against Plaintiff.[4]

---

4. In light of this conclusion, it is not necessary to address defendants' Qualified Immunity Defense.