**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 14-1939**

———————

FREDDIE L. GOODE,

             Plaintiff – Appellant,

      v.

CENTRAL VIRGINIA LEGAL AID SOCIETY, INC.,

             Defendant – Appellee.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, District Judge.  (3:14-cv-00281-HEH)

———————

Argued:  September 15, 2015        Decided:  December 9, 2015

———————

Before WYNN and DIAZ, Circuit Judges, and DAVIS, Senior Circuit Judge.

———————

Appeal dismissed and case remanded by published opinion.  Senior Judge Davis wrote the opinion, in which Judge Wynn and Judge Diaz concurred.

———————

**ARGUED:** Barbara Allyn Queen, LAWRENCE & ASSOCIATES, Richmond, Virginia, for Appellant.  Christy E. Kiely, HUNTON & WILLIAMS LLP, Richmond, Virginia, for Appellee.  **ON BRIEF:** Ryan A. Glasgow, HUNTON & WILLIAMS LLP, Richmond, Virginia; Warren David Harless, E. Ford Stephens, CHRISTIAN & BARTON L.L.P., Richmond, Virginia, for Appellee.

———————

DAVIS, Senior Circuit Judge:

Freddie Lee Goode was a Senior Managing Attorney for Central Virginia Legal Aid Society ("CVLAS") until CVLAS's Board of Directors eliminated Goode's position in March 2013. Goode brought suit against CVLAS, alleging discrimination on the basis of race, sex, and age. CVLAS filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Goode had failed to state a claim upon which relief could be granted. The district court granted the motion to dismiss without prejudice, and Goode timely appealed. For the reasons that follow, we conclude that the order of dismissal was not a final and appealable order, and we therefore dismiss this appeal for lack of jurisdiction and remand the case to the district court with instructions.

I.

A.

Goode, an African-American male, was 72 years old when CVLAS terminated his employment in March 2013. He had worked at CVLAS's Richmond office for 25 years. He had begun working for the organization as an unpaid volunteer in August 1988 and had held many paid positions with CVLAS since that time. As one of CVLAS's two Senior Managing Attorneys in 2013, Goode was responsible for "representing clients in civil matters; drafting legal documents; and advising clients on their legal rights and

2

remedies, generally. [Goode also] . . . coordinat[ed] the activities of the Social Security, elder law and public benefits units[] and supervis[ed] the pro bono hotline." J.A. 8.[1] Goode reported to Executive Director Stephen Dickinson, a white male.

Goode alleged in his complaint that CVLAS's Board of Directors had met on March 11, 2013, to discuss a loss of government funding and the corresponding need to reorganize attorney positions within the organization's three offices. When the Board discussed Goode's position, someone in the meeting allegedly commented that, due to Goode's receipt of veteran and other benefits, "he would not be impacted as much as others by the restructuring." J.A. 9. Goode averred that, "[a]s a result of the restructuring, five African American employees, including Goode, were let go." J.A. 10. Each terminated employee was over the age of 40, and Goode was the oldest of CVLAS's nine attorneys at the time and the oldest CVLAS employee overall. Goode's termination was effective on March 31, 2013.

According to Goode, "CVLAS claim[ed] that it eliminated Goode's position because representation for Social Security . . . cases at the litigation stage was a service available through the private bar . . . and . . . the office was going to

---

[1] Citations to the "J.A." refer to the Joint Appendix that the parties submitted in this case.

3

concentrate more on family law cases." J.A. 11. Goode challenged this rationale in his complaint, asserting that the availability of private counsel to assist with Social Security matters was "not the case across the board" and that "there remained a substantial need for this client service" at CVLAS. Id.

In seeking to challenge CVLAS's purported justification for his termination as pretextual, Goode also described in his complaint the experiences of two other CVLAS employees who had retained their employment despite the restructuring. Specifically, he discussed Christianne Queiroz,[2] "a much younger, non African American (Latin[a]) female," and Martin Wegbreit, CVLAS's other Senior Managing Attorney, who is white. J.A. 9, 11. Goode alleged that Queiroz was an "attorney" but otherwise provided no information regarding her position or duties at CVLAS. J.A. 12. Goode further alleged that CVLAS had allowed Queiroz to assume part-time status while continuing to earn the same salary as she had previously.

As to Wegbreit, Goode averred that he "is substantially younger," "has a higher salary," and "was a similarly-situated employee to Goode in terms of workload and responsibility within

---

[2] This attorney's last name is alternately spelled "Queiroz" and "Quieroz" in the complaint. See, e.g., J.A. 11–12. We use "Queiroz" because the complaint uses this spelling first.

4

CVLAS." J.A. 9. As the other Senior Managing Attorney, Wegbreit was in charge of litigation services. Goode contended that CVLAS "used a budget shortfall as an excuse to terminate Goode while maintaining higher salaries and favorable terms for Wegbreit and Quieroz [sic]." J.A. 12.

Goode further challenged the proposition that CVLAS had terminated him for financial reasons by explaining that, after learning of the Board's decision, Goode had proposed some cost-saving measures that CVLAS could have implemented to keep him on staff, but his supervisor was not amenable to these suggestions. In rejecting one proposal, Dickinson stated that he could not institute a 10% pay cut for employees earning over $65,000 per year because he had already promised raises to all employees and because two of the attorneys whose salaries would be reduced by such a plan were single mothers. Although Dickinson told Goode "that he could continue with CVLAS in a position supervising the volunteer lawyer pro bono hotline," Goode "felt that Dickinson did not have any intention to keep him at CVLAS." J.A. 10.

B.

Goode brought suit against CVLAS on April 17, 2014, asserting claims for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17 (2012), 42 U.S.C. § 1981 (2012), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34 (2012). He stated

5

in his complaint that he "believe[d] that CVLAS's financial considerations and their budget cuts were pretext for race, sex, and age discrimination."[3] J.A. 11.

On July 15, 2014, CVLAS filed a motion to dismiss for failure to state a claim under Rule 12(b)(6). The district court determined that Goode had failed either to present direct or circumstantial evidence of discrimination or to make out a prima facie case of discrimination under the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Accordingly, the court stated that "Goode fail[ed] to allege sufficient facts supporting his claim that his termination was the result of unlawful discrimination." Goode v. Cent. Va. Legal Aid Soc'y, No. 3:14cv281-HEH, 2014 WL 3945870, at *6 (E.D. Va. Aug. 12, 2014). The court granted CVLAS's motion and dismissed the case without prejudice on August 12, 2014, concluding that "Goode has failed to state a

---

[3] The district court did not consider Goode's claim of sex discrimination because Goode had not presented a separate count raising this claim. Goode has since abandoned this claim on appeal, as he alleges in his opening brief only that "he was removed from his position due to his race and age." Appellant's Br. 10; see United States v. Washington, 743 F.3d 938, 941 n.1 (4th Cir. 2014) ("Issues that [the appellant] failed to raise in his opening brief are waived."). In part for the same reason, the district court also disregarded Goode's ostensible claim under 42 U.S.C. § 1983, which Goode had listed in the complaint's introduction but had not mentioned elsewhere. Goode has also abandoned this claim on appeal.

claim for unlawful discrimination under Title VII, 42 U.S.C. § 1981, and the ADEA." Id. at *7.

Goode filed a timely notice of appeal on September 8, 2014. For the reasons stated below, we dismiss this appeal for lack of jurisdiction and remand the case to the district court with instructions to allow Goode to amend his complaint. Because we conclude that we do not have appellate jurisdiction over this case, we do not reach the merits of the district court's legal conclusions.

II.

A.

This Court may exercise jurisdiction only over final orders, 28 U.S.C. § 1291, and certain interlocutory and collateral orders,[4] 28 U.S.C. § 1292; Fed. R. Civ. P. 54(b); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545–46 (1949). An order dismissing a complaint without prejudice is not an appealable final order under § 1291 if "the plaintiff

---

[4] The district court's order in this case was not an immediately appealable interlocutory or collateral order. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978) (recognizing that the collateral order exception renders only a "small class" of decisions immediately appealable—those that "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and [are] effectively unreviewable on appeal from a final judgment"). The relevant question is therefore whether the district court's order of dismissal was appealable as a final order.

could save his action by merely amending his complaint." Domino Sugar Corp. v. Sugar Workers Local Union 392, 10 F.3d 1064, 1066–67 (4th Cir. 1993). In Domino Sugar, this Court held that if "the grounds of the dismissal make clear that no amendment could cure the defects in the plaintiff's case, the order dismissing the complaint is final in fact" and therefore appealable. Id. at 1066 (quoting Coniston Corp. v. Vill. of Hoffman Estates, 844 F.2d 461, 463 (7th Cir. 1988)); see Young v. Nickols, 413 F.3d 416, 418 (4th Cir. 2005). Likewise, "a plaintiff may not appeal the dismissal of his complaint without prejudice unless the grounds for dismissal clearly indicate that 'no amendment [in the complaint] could cure the defects in the plaintiff's case.'" Domino Sugar, 10 F.3d at 1067 (alteration in original) (quoting Coniston Corp., 844 F.2d at 463).

We have interpreted Domino Sugar to "require[] [an appellate panel] to examine the appealability of a dismissal without prejudice based on the specific facts of the case in order to guard against piecemeal litigation and repetitive appeals." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 345 (4th Cir. 2005); see Domino Sugar, 10 F.3d at 1066–67 ("[A]n appellate court may evaluate the particular grounds for dismissal in each case to determine whether the plaintiff could save his action by merely amending his complaint."). In reaching these case-specific determinations, "[w]hat makes

8

[dismissals without prejudice] final or nonfinal is not the speculative possibility of a new lawsuit, but that they 'end the litigation on the merits and leave nothing for the court to do but execute the judgment.'" GO Comput., Inc. v. Microsoft Corp., 508 F.3d 170, 176 (4th Cir. 2007) (quoting MDK, Inc. v. Mike's Train House, Inc., 27 F.3d 116, 119 (4th Cir. 1994)).

Notwithstanding this emphasis on the need for case-by-case determinations, courts considering this issue have established some guidelines. For instance, an appellate panel may consider whether the district court expressly dismissed the "action . . . in its entirety" or merely dismissed the complaint, as courts have generally considered the former, but not the latter, appealable. Chao, 415 F.3d at 345; see also Zayed v. United States, 368 F.3d 902, 905 (6th Cir. 2004) ("Where an action, and not merely an amendable complaint (or petition), is dismissed without prejudice, the order of dismissal is final and appealable."). As this Court suggested in Domino Sugar, however, considering whether the district court merely dismissed the complaint or expressly dismissed the action as a whole is essentially one way of determining whether "the grounds of the dismissal make clear that no amendment could cure the defects in the plaintiff's case, [such that] the order dismissing the complaint is final in fact and [appellate jurisdiction exists]."

10 F.3d at 1066–67 (second alteration in original) (quoting Coniston Corp., 844 F.2d at 463).

Moreover, in cases in which the district court granted a motion to dismiss on procedural grounds that no amendment to the pleadings could cure, we have found that the dismissal was final and appealable. In Domino Sugar, for instance, we held that the district court's order of dismissal based on "failure to exhaust contractual remedies" was final and appealable because no amendment to the complaint could cure this procedural shortcoming. 10 F.3d at 1067. Likewise, we have determined that orders of dismissal without prejudice were final and appealable when cases were dismissed for procedural reasons unrelated to the contents of the pleadings, as in a case dismissed because the plaintiffs had no right to bring the particular causes of action, see GO Comput., Inc., 508 F.3d at 176, and in a case dismissed because the claims were barred by Heck v. Humphrey, see Young, 413 F.3d at 418.

By contrast, in cases in which the district court granted a motion to dismiss for failure to plead sufficient facts in the complaint, we have consistently found, albeit in unpublished, non-precedential decisions, that we lacked appellate jurisdiction because the plaintiff could amend the complaint to cure the pleading deficiency. See, e.g., Shackleford v. Riverside Reg'l Med. Ctr., 466 F. App'x 287, 287 (4th Cir. 2012)

10

(per curiam) (unpublished) ("Because the deficiency identified by the district court—that the complaint did not assert sufficient allegations in support of its legal conclusions—may be remedied by the filing of a complaint that articulates adequate allegations, we conclude that the order . . . is neither a final order nor an appealable interlocutory or collateral order."); Hankins v. Ayers, 327 F. App'x 388, 388–89 (4th Cir. 2009) (per curiam) (unpublished); Green v. Booker, 149 F. App'x 140, 141 (4th Cir. 2005) (per curiam) (unpublished); Sindram v. Raker, 119 F. App'x 528, 529 (4th Cir. 2005) (per curiam) (unpublished). We think the time has come to enshrine this salutary rule in a precedential opinion, and we do so here.

B.

1.

CVLAS argues that the district court's order granting its motion to dismiss without prejudice was not appealable because Goode could have amended his complaint to cure the pleading deficiencies that the district court identified. In other words, CVLAS contends that we lack jurisdiction over this appeal. We agree.

The district court's grounds for dismissal did not clearly indicate that no amendment could cure the defects in the complaint, so the order of dismissal was not final and appealable. To the contrary, the district court stated several

11

grounds for dismissal, each of which is readily curable by amendment. We consider each in turn.

First, the district court concluded, as to Goode's race discrimination claims under Title VII and § 1981, that Goode had failed to present direct or circumstantial evidence of discrimination or to make out a prima facie case of discrimination. Goode argues that the district court erred in requiring him to establish a prima facie case of race discrimination at the pleading stage, relying primarily on Swierkiewicz v. Sorema, N. A., 534 U.S. 506, 508 (2002). Accordingly, we must first consider whether it is appropriate for this Court to examine if Goode could have amended the complaint to meet an allegedly erroneous standard.

2.

Because the relevant jurisdictional inquiry is whether "the grounds of the dismissal make clear that no amendment could cure the defects in the plaintiff's case," Domino Sugar, 10 F.3d at 1066 (emphasis added) (quoting Coniston Corp., 844 F.2d at 463), we conclude that it is appropriate to consider whether a plaintiff could have amended the complaint to satisfy the pleading standards that the district court imposed. In this case, a primary ground for the district court's dismissal of Goode's race discrimination claims was Goode's failure to allege sufficient facts to present direct or circumstantial evidence of

12

discrimination or to establish a prima facie case of discrimination. We therefore analyze whether Goode could have amended his complaint to cure these supposed pleading defects, regardless of whether the district court was correct in imposing these requirements. Accordingly, we need not determine at this juncture whether the district court in fact applied an erroneous legal standard in dismissing Goode's complaint.[5]

Such an analysis serves to bolster the efficiency and smooth operation of the judiciary. This Court has recognized that § 1291 preserves judicial economy by ensuring that a district court maintains authority over a case until it issues a final and appealable order, thus preventing piecemeal litigation and repeated appeals. See Chao, 415 F.3d at 345; Domino Sugar, 10 F.3d at 1067. If a plaintiff were able to appeal an otherwise unappealable order of dismissal by contending that the district court had applied an erroneous standard, the plaintiff would seemingly be able to bypass the amendment process in the

---

[5] For purposes of this jurisdictional inquiry, we therefore assume without deciding that the district court applied the correct legal standards in assessing the motion to dismiss. As such, our discussion of the pleading standards employed by the district court should not be read to indicate that we would hold that the district court's analysis was free from error were we to consider this issue on the merits. Cf. SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 441 (4th Cir. 2015) ("Iqbal and Twombly do not require a plaintiff to prove his case in the complaint." (quoting Robertson v. Sea Pines Real Estate Cos., Inc., 679 F.3d 278, 291 (4th Cir. 2012))).

13

district court and autonomously render the order appealable, largely defeating the purpose of § 1291.

Moreover, allowing appellate jurisdiction to rest on an argument that the district court had applied an improper standard would paradoxically require this Court to assess the merits of a district court's decision in order to determine whether we have jurisdiction to do so—putting the cart before the horse. We thus consider whether Goode could have amended his complaint to cure the defects that the district court identified—including his failure to make out a prima facie case of discrimination—rather than considering whether Goode could have amended his complaint to satisfy some other legal standards that the district court did not impose.

C.

1.

To establish a prima facie case of race discrimination under McDonnell Douglas, a plaintiff must demonstrate "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd sub nom. Coleman v. Court of Appeals of Md., 132 S. Ct. 1327 (2012) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)). Here,

14

the district court determined that the complaint did not provide sufficient factual allegations to show that Goode's job performance was satisfactory at the time of his termination or that CVLAS treated Goode differently than similarly situated employees outside the protected class.

We conclude that Goode could have amended his complaint to add factual allegations to satisfy these standards, and the district court's order did not indicate otherwise. For instance, Goode could have provided facts to support his allegation that he had "always met or exceeded the performance expectations of CVLAS." J.A. 9. He could have referenced positive feedback or performance reviews that he had received from his CVLAS supervisor since 2009—the year that, according to the district court, Goode's allegations last suggested that he had performed satisfactorily.

Likewise, Goode could have presented factual allegations to support his assertions that the other Senior Managing Attorney, Martin Wegbreit, "was a similarly-situated employee to Goode in terms of workload and responsibility within CVLAS," id., and that Wegbreit received more favorable treatment than Goode. Goode could have amended his complaint to include facts demonstrating the similarities between his workload and that of Wegbreit, perhaps clarifying why Wegbreit's higher salary and

15

his responsibilities as the attorney in charge of litigation did not belie Goode's claim that the two were similarly situated.

The district court also based its order of dismissal on its determination that Goode had failed to set forth facts indicating that CVLAS "did not treat . . . race neutrally when making its decision." Goode, 2014 WL 3945870, at *6 (alteration in original) (quoting Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998)). In other words, the court concluded that Goode did not state a plausible claim that CVLAS discriminated against him because of his race. In doing so, the court determined that Goode's allegations impliedly conceded that CVLAS's purported financial reasons for his termination were at least partially true, and the court thus concluded that "Goode essentially ple[d] himself out of court." See id. at *4.

Again, these are precisely the kinds of pleading deficiencies that amendment to the complaint could have cured, and the order of dismissal did not preclude this remedy; to the contrary, a dismissal without prejudice invites such an amendment. Goode could have rectified the apparent defects by presenting factual allegations to demonstrate why he believed that his termination had been racially motivated and, perhaps more importantly, to show why CVLAS's purported justifications were pretextual, thus bolstering his claim that CVLAS had intentionally discriminated against him based on race.

16

Goode could also have responded to the district court's observation that he had apparently "ple[d] himself out of court" by amending his complaint to clarify that he was not conceding that CVLAS's alleged financial reasons for his termination were true.  A plaintiff who wishes to amend a complaint is not limited merely to adding allegations to the original pleadings; rather, the plaintiff may remove or, plainly, amend the original allegations by filing an amended complaint.[6]  That is to say, even if Goode's complaint contained allegations that rendered his claims of discrimination facially untenable, amendment to the complaint could have cured this defect.  As the district court's dismissal of the original complaint without prejudice plainly anticipated, pleading a plausible claim of race discrimination hardly involves heavy lifting.

---

[6] See Staggs v. Doctor's Hosp. of Manteca, Inc., No. 2:11-cv-00414-MCE-KJN, 2015 WL 6951759, at *3 (E.D. Cal. Nov. 10, 2015) (recognizing that case law "does not forbid a plaintiff from changing or deleting previously pled factual allegations in an amended complaint"); cf. Scott v. Chuhak & Tecson, P.C., 725 F.3d 772, 783 (7th Cir. 2013) ("[W]here the original complaint and an amended complaint contain contradictory or mutually exclusive claims, only the claims in the amended complaint are considered; the contradicted claims in the original complaint are knocked out.").  But cf. United States v. McKeon, 738 F.2d 26, 31 (2d Cir. 1984) (noting that the original admission of a litigant who amends the pleadings to replace one version of the facts with another is admissible at trial).

17

2.

Finally, the district court concluded that Goode had also failed to allege a plausible claim of discrimination based on age. The court explained that to present a claim of age discrimination under the ADEA, a plaintiff must allege "membership in a protected class, satisfactory job performance, and adverse employment action," id. at *6 (citing Causey, 162 F.3d at 802), as well as facts establishing that the plaintiff was "replaced by someone outside the protected class with comparable qualifications," id. As in the context of race discrimination, the court determined that Goode had not pled sufficient facts demonstrating his satisfactory job performance at the time of his termination. Further, the court concluded that Goode had failed to plead facts showing that he was replaced by someone outside the protected class; in fact, the court construed Goode's allegations to indicate that "his position and some of his job duties were eliminated" such that he was "not replaced, let alone by someone outside the protected class." Id.

Again, it is clear to us that the district court's order did not prevent Goode from amending his complaint to correct these supposed pleading deficiencies. Goode could have cured the first alleged defect—the lack of sufficient factual allegations demonstrating satisfactory job performance—through

18

amendment, as discussed above. As to the second alleged shortcoming—failure to satisfy the fourth element of a prima facie case of age discrimination—the court similarly did not "make clear" that Goode could not have amended his complaint to allege that he was replaced by someone outside the protected class. The district court's order stated that "Goode does not allege he was replaced by anyone at all," id. (emphasis added), but it did not indicate that Goode could not have done so, or, of equal import, that he could not allege his duties were dispersed to remaining, younger former colleagues. Instead, the district court drew the inference from Goode's allegations that he was not replaced by anyone, and it thus concluded that "Goode fail[ed] to allege sufficient facts that his termination resulted from age discrimination." Id. The district court's order therefore did not clearly preclude Goode from amending his complaint to correct any pleading inadequacy.

In this regard, while Goode's complaint "acknowledges that his position and some of his job duties were eliminated," id., the district court's order did not preclude Goode from otherwise establishing a prima facie case under the ADEA. It is certainly possible, for instance, that Goode could have submitted an amended complaint with factual allegations demonstrating that CVLAS had distributed some of Goode's job duties to substantially younger employees, thus establishing a prima facie

19

case through an alternate route. See Duffy v. Belk, Inc., 477 F. App'x 91, 94–95 (4th Cir. 2012) (unpublished) ("We have determined before that a transfer of some of a terminated plaintiff's duties to younger workers is sufficient to satisfy the fourth element of a prima facie case of age discrimination."). Accordingly, the district court did not make clear that no amendment could have cured the grounds for dismissal. Because Goode could have amended his complaint, the district court's order dismissing the complaint without prejudice is not, and should not be treated as, final and appealable.

D.

It puzzles us that, for his part, Goode repeatedly asserts that he "was not afforded the ability to amend his complaint," Appellant's Br. 49, and that, because "the [district court] did not allow Goode to amend his Complaint in the decision, the Order should be treated as a final order and this Court should have jurisdiction over this matter," Appellant's Reply Br. 16–17. This argument flips the relevant standard on its head. A district court's decision is not final and appealable merely because the court did not affirmatively state that the plaintiff could have amended the complaint; rather, we may only exercise appellate jurisdiction where a district court's order clearly indicates that amendment to the complaint could not cure the

20

complaint's defects. See Domino Sugar, 10 F.3d at 1066. A litigant may not presume the finality of a district court's order—particularly an order expressly granting a motion to dismiss "without prejudice" on the basis of pleading inadequacies that could be rectified with little effort by amendment.

Moreover, Goode's argument that he "was not afforded the ability to amend his complaint," Appellant's Br. 49, rings hollow, as he never attempted to amend his complaint and never sought leave to do so (even assuming he needed to seek leave after a dismissal without prejudice of the original complaint). Had he sought leave to amend, the district court surely would have granted this motion, given the liberal standard that governs a request to amend a complaint under Federal Rule of Civil Procedure 15(a)(2). See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); Foman v. Davis, 371 U.S. 178, 182 (1962); Galustian v. Peter, 591 F.3d 724, 729 (4th Cir. 2010) ("It is this Circuit's policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)."). Goode also was not barred from amending his complaint by any statute of limitations, as an amended complaint would have related back to the date that the original complaint had been filed. See Fed. R. Civ. P. 15(c)(1)(B) ("An amendment to a pleading relates back

to the date of the original pleading when: . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.").

Similarly, Goode's decision not to amend the complaint did not itself render the order of dismissal final and appealable. To be sure, we recognized in Chao that a court assessing appellate jurisdiction may consider whether a plaintiff has chosen to "stand on the complaint," treating the order as final and appealable rather than seeking amendment in the district court. See 415 F.3d at 345. As part of its case-specific jurisdictional analysis, the Court in Chao considered such a decision by the plaintiff-appellant, and the Court ultimately concluded that it had appellate jurisdiction in that case. Id. at 345–46.

Yet Chao does not stand for the general proposition that a plaintiff may choose not to amend a complaint in order to single-handedly render an order of dismissal final and appealable under all circumstances. As we explained above, it is the province of the district court—not of the party seeking an appeal—to indicate that an order is final and appealable. Chao also involved a unique set of facts that differ significantly from those in the case before us. In Chao, the Secretary of Labor appealed the district court's dismissal of

22

her action against various defendants for violations of the Fair Labor Standards Act.  Id. at 343.  Because the Secretary contended "that she must be able to employ similarly-worded complaints throughout the country for consistency," she "elect[ed] to stand on the complaint presented to the district court."  Id. at 345.  In doing so, "the Secretary . . . waived the right to later amend . . . thus protect[ing] against the possibility of repetitive appeals that concerned [this Court] in Domino Sugar."  Id.

The Court in Chao therefore considered the weighty assurances of the Secretary of Labor that the objectives of Domino Sugar and § 1291 would best be served by the Court's exercise of appellate jurisdiction in that case, particularly in light of the institutional interests of the Executive Branch. Goode, by contrast, cannot and does not attempt to make these assurances, and he does not seek to vindicate such institutional interests.  Goode's failure to seek leave to amend the complaint thus does not favor appealability of the district court's order of dismissal.

Goode also contends that we have appellate jurisdiction based on the proposition that an order dismissing an action in its entirety rather than one dismissing only the complaint imputes greater finality and therefore favors appealability. Indeed, the district court's order does state that "Defendant's

23

Motion to Dismiss is granted and <u>the case</u> is dismissed without prejudice." <u>Goode</u>, 2014 WL 3945870, at *7 (emphasis added). Nevertheless, we see no indication that the district court intended for its use of the word "case" rather than "complaint" to hold any special meaning or for it to signify any particular finality, especially in light of the court's express statement that the dismissal was "without prejudice"—a phrase that generally indicates that a court's decision is not final.

Given the emphasis in this Circuit's governing precedent on case-by-case review, we are unconvinced that the district court's use of the word "case" rather than "complaint" is determinative, or even highly probative, of the order's appealability. Rather, the proper inquiry is whether the district court's grounds for dismissal clearly indicate that no amendment could cure the complaint's defects. We hold that the grounds for dismissal in this case did not clearly preclude amendment. Accordingly, we lack jurisdiction to review the district court's decision.

### III.

For the foregoing reasons, we dismiss this appeal for lack of jurisdiction and remand the case to the district court with instructions to allow Goode to amend his complaint.

<u>DISMISSED AND REMANDED</u>