**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-6132

ANTHONY FRED MARTIN,

Plaintiff – Appellant,

v.

SUSAN DUFFY,

Defendant – Appellee.

Appeal from the United States District Court for the District of South Carolina, at Florence. David C. Norton, District Judge. (4:15-cv-04947-DCN)

Argued: March 21, 2017                           Decided: June 1, 2017

Before GREGORY, Chief Judge, and WYNN and HARRIS, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Wynn wrote the opinion, in which Chief Judge Gregory and Judge Harris joined.

**ARGUED**: Kylie Danelle Barnhart, WEST VIRGINIA UNIVERSITY COLLEGE OF LAW, Morgantown, West Virginia, for Appellant. Andrew Lindemann, DAVIDSON & LINDEMANN, P.A., Columbia, South Carolina, for Appellee. **ON BRIEF**: Lawrence D. Rosenberg, JONES DAY, Washington, D.C., for Appellant. Andrew Lindemann, DAVIDSON & LINDEMANN, P.A., Columbia, South Carolina, for Appellee.

WYNN, Circuit Judge:

Defendant Susan Duffy ("Duffy"), a captain at Perry Correctional Institution ("Perry CI")—a state prison within the South Carolina Department of Corrections system—placed Plaintiff Anthony Fred Martin ("Martin"), an inmate at Perry CI, in segregation after Martin filed a grievance against a prison sergeant contending that the sergeant inappropriately touched him during a shakedown. Alleging that his placement in segregation violated his constitutional rights to freedom from retaliation for filing a grievance, equal protection, and due process, Martin filed a pro se complaint under 42 U.S.C. § 1983 against Duffy.

The district court dismissed Martin's complaint for failure to state a claim upon which relief may be granted. We agree that Martin failed to state claims under the Equal Protection and Due Process Clauses. But construing Martin's complaint liberally, as we must, we conclude that Martin pleaded sufficient facts to state a claim that Duffy violated Martin's First Amendment rights by placing him in segregation as retaliation for filing a grievance. And we further conclude that Duffy is not entitled to qualified immunity from Martin's retaliation claim because, under this Court's precedent, it was clearly established at the time Duffy placed Martin in segregation that retaliating against an inmate for filing a grievance violates the inmate's rights under the First Amendment. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 546 (4th Cir. 2017). Accordingly, we reverse, in part, the district court's dismissal of Martin's action.

I.

A.

On September 11, 2014, Martin filed an electronic message through the prison kiosk system, alleging that a prison sergeant inappropriately touched him during a shakedown. The next day, Duffy removed Martin from the general inmate population and placed him in a holding cell in the administrative building. Martin alleged that, once in holding, Duffy "questioned [him] relentlessly about an informal resolution attempt of [his grievance alleging] inappropriate an[d] unwanted touching 'battery' against [the sergeant that Martin] had filed the day before." J.A. 4. Martin also alleged that, following Duffy's questioning, Duffy placed Martin in pre-hearing detention or "segregation" in an attempt to "maintain the integrity of [the] investigation" into Martin's complaint against the sergeant. J.A. 10, 13.

Subsequently, on November 18, 2014, Martin submitted a "Request to Staff Member" chit to Duffy complaining that "[Duffy] had no justifiable means to lock [him] away" and that "[i]f an investigation was or is being conducted, no one ha[d] spoken to [him] concerning [the] matter." J.A. 15. In this same "Request to Staff Member" chit, Martin accused Duffy of violating South Carolina Department of Corrections procedure by reprising against him "for [his] participating in an informal resolution" of his earlier grievance. J.A. 15. A month later, Duffy responded to Martin, stating that Martin had been placed under investigation by the Division of Investigations; that he was no longer under investigation; and that he was currently on the "yard list" to return to the general population. J.A. 15.

When prison officials arranged for Martin to return to the general inmate population on December 31, 2014, 110 days after his initial placement in segregation, Martin refused

3

to reenter the general population and instead requested a transfer to another prison "as a resolution to the situation." J.A. 5. Later that afternoon, a lieutenant filed an incident report recounting Martin's "refus[al] to go to the yard per classifications" and citing Martin for "[r]efusing to obey" orders. J.A. 16.

Nearly two weeks later, on January 16, 2015, Martin submitted an "Inmate Request" through the prison's Offender Management System, reciting his interactions with Duffy, his allegation that Duffy placed him in segregation "for attempting to informally resolve an allegation of battery against [a sergeant] by way of the electronic KIOSK," and his "attempt[] to informally resolve the issue" with no response. J.A. 10. In response to Martin's "Inmate Request," a prison official notified Martin that he was not under investigation; that officials believed his allegations had been found invalid by investigators; and that his refusal to return to the general population had resulted in a "pending charge." J.A. 10. Consequently, on January 22, 2015, prison officials held a hearing regarding Martin's refusal to return to the general population on December 31, 2014. Martin refused to attend the hearing. A hearing officer found Martin guilty of the charged offense and imposed various sanctions.

Approximately five months later, Martin received his requested transfer to Broad River Correctional Institution. According to Martin, during the 110 days that he remained in segregation, he never received a hearing regarding his detention, nor was he ever informed of the progress of any investigation related to the grievance that he had filed.

B.

4

On December 14, 2015, Martin, proceeding pro se, filed a complaint against Duffy in the United States District Court for the District of South Carolina. In his complaint, Martin alleged that Duffy's "unequal treatment" of him was "an act of reprisal, harassment and retaliation simply because [Martin] had attempted to informally resolve a grievance [Duffy] did not like." J.A. 6. Martin also alleged that Duffy's placement of Martin in segregation, when other inmates who had similarly "attempted to informally resolve grievances of inappropriate an[d] unwanted touching" had not been placed in segregation, violated his right to equal protection. J.A. 6. And Martin alleged two claims sounding in denial of procedural due process: (1) that his placement in segregation caused him to generally "suffer[] an atypical and significant hardship" and (2) that his placement in segregation caused him to lose "good time credits for each month [he was in segregation] invalidly."[1] J.A. 6, 10.

On December 30, 2015, a magistrate judge issued a report and recommendation concluding that Martin's complaint should be summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). Noting its obligation to construe liberally Martin's pro se complaint, the magistrate judge found that Martin failed to state cognizable equal protection and due process claims under 42 U.S.C. § 1983. In particular, the magistrate judge first found that Martin failed to state a due process claim because "South Carolina law confers no protected

---

[1] Because Martin's procedural due process claim concerning good time credits was alleged in documents attached to Martin's complaint, we construe the complaint to include such a claim. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (stating that "[a] document filed *pro se* is 'to be liberally construed'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))).

liberty interest upon . . . inmates from being classified or being placed in administrative segregation." J.A. 34. And regarding Martin's equal protection claim, the magistrate judge found that Martin failed to state a plausible claim because he "provide[d] no factual allegations to show that [Duffy] treated [Martin] differently than any other similarly situated inmate or that his placement in segregation . . . resulted from intentional or purposeful discrimination." J.A. 35. The magistrate judge's report and recommendation did not explicitly address Martin's retaliation claim, nor did it address Martin's procedural due process claim arising from his alleged loss of the opportunity to earn good time credits.

Martin filed an objection to the report and recommendation on January 12, 2016. In his objection, Martin specifically requested to be allowed to proceed with discovery on his equal protection claim, again alleging that the unequal treatment he experienced "was the result of intentional and purposeful discrimination." J.A. 38. And though Martin did not specifically set out his other claims in his objection, Martin attached an "Amended Complaint" to his objection restating his due process claim relating to his allegedly improper segregation without a hearing and his First Amendment retaliation claim, recounting the facts in a substantially similar manner as his first complaint.

After conducting a de novo review, the district court affirmed the magistrate judge's report and recommendation in its entirety and dismissed Martin's complaint without prejudice on January 20, 2016. Martin timely filed a notice of appeal.

II.

As an initial matter, we must determine whether this Court may properly exercise appellate jurisdiction over Martin's case. Duffy argues that we lack jurisdiction to entertain

6

Martin's appeal for two reasons: first, because Martin waived his right to appellate review when he failed to file specific objections to the magistrate judge's report and recommendation concluding that Martin failed to state claims upon which relief could be granted; and second, because the district court's dismissal of Martin's complaint without prejudice is not a final and appealable order. We will discuss both of these contentions in turn.

1.

A plaintiff is "deemed to have waived an objection to a magistrate judge's report if [he] do[es] not present [his] claims to the district court." *United States v. Benton*, 523 F.3d 424, 428 (4th Cir. 2008) ("Failure to raise an argument before the district court typically results in the waiver of that argument on appeal."). In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). Even so, when confronted with the objection of a pro se litigant, we must also be mindful of our responsibility to construe pro se filings liberally. *See Erickson*, 551 U.S. at 94.

As set out earlier, although Martin identified only his equal protection claim in his objection to the magistrate's report and recommendation, Martin also attached an "Amended Complaint" that restated all of his claims with the exception of his due process claim relating to his alleged loss of the opportunity to accrue good time credits. Because (1) we must liberally construe Martin's objection and (2) Martin presented to the district court anew in the attached "Amended Complaint" his claims of First Amendment

7

retaliation, equal protection, and due process relating to his segregation, we conclude Martin sufficiently alerted the district court that he believed the magistrate judge erred in recommending dismissal of those claims. However, because Martin did not incorporate his due process claim regarding his loss of the opportunity to earn good time credits in his objection or "Amended Complaint," we find that Martin has waived the right to challenge on appeal the dismissal of that claim.

2.

We further conclude that the district court's dismissal of Martin's complaint without prejudice did not deprive this Court of jurisdiction to decide Martin's appeal. "Article III courts are courts of limited jurisdiction, possessing only the authority granted by Congress and the Constitution." *United States ex rel. Lutz v. United States*, 853 F.3d 131, 136 (4th Cir. 2017). "Generally, a party may only appeal an order that is final, that is, nothing remains for the district court to do except execute the judgment." *Id.* at 136–37 (citing 28 U.S.C. § 1291; *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009)). Because "[a]n order which dismisses a complaint without expressly dismissing the action is [generally] not . . . an appealable order," a plaintiff generally may not appeal the dismissal of his complaint without prejudice. *Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1066 (4th Cir. 1993) (alterations in original) (internal quotation marks omitted) (quoting *Ruby v. Sec'y of the U.S. Navy*, 365 F.2d 385, 387 (9th Cir. 1966)). However, a district court's dismissal of a plaintiff's complaint without prejudice will not bar the plaintiff's appeal when "the grounds for dismissal clearly indicate that 'no amendment [to the complaint] could cure the defects in the plaintiff's case.'" *Id.* at 1067

(quoting *Coniston Corp. v. Vill. of Hoffman Estates*, 844 F.2d 461, 463 (7th Cir. 1988)). Thus, in assessing whether the district court's dismissal of Martin's complaint constitutes a final, appealable order, we must "evaluate the particular grounds for dismissal in [Martin's] case to determine whether [Martin] could save his action by merely amending his complaint." *Id.* at 1066–67; *see also Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 345 (4th Cir. 2005) (interpreting *Domino Sugar* to "require[ an appellate panel] to examine the appealability of a dismissal without prejudice based on the specific facts of the case in order to guard against piecemeal litigation and repetitive appeals").

On the specific facts before us, we find that the district court's dismissal order qualifies as an appealable order because Martin cannot save his action by merely amending his complaint. Regarding the First Amendment retaliation claim, in particular, Martin and Duffy agree that the district court did not address that claim in its order dismissing Martin's complaint without prejudice. Although a district court's failure to address a claim may foreclose appellate review of that claim, courts have found that an order that fails to explicitly address or dispose of all claims presented to the court may nevertheless qualify as a final, appealable order "[i]f the language used [in the order] is calculated to conclude all the claims before the district court," *Munson Transp., Inc. v. Hajjar*, 148 F.3d 711, 714 (7th Cir. 1998) (citing *Armstrong v. Trico Marine, Inc.*, 923 F.2d 55, 58 (5th Cir. 1991)), or "where 'the district court obviously was not trying to adjudicate fewer than all the pleaded claims,'" *Perkin-Elmer Corp. v. Computervision Corp.*, 680 F.2d 669, 670 (9th Cir. 1982) (quoting *Lockwood v. Wolf Corp.*, 629 F.2d 603, 608 (9th Cir. 1980)); *see also*

9

*Moreau v. Harris County*, 158 F.3d 241, 244 (5th Cir. 1998) ("A judgment reflecting an intent to dispose of all issues before the district court is final.").

Although the magistrate judge did not analyze Martin's retaliation claim within the framework this Court has set out for evaluating First Amendment retaliation claims, *see infra* Part III.A.1, the magistrate judge looked to this Court's precedent in *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994), for the proposition that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state," 40 F.3d at 75, as well as *Ashann-Ra v. Virginia*, 112 F. Supp. 2d 559 (W.D. Va. 2000), in which a district court in this circuit held that "a prison official's failure to comply with the state's grievance procedure is not actionable under [Section] 1983," 112 F. Supp. 2d at 569. The district court thereafter affirmed the magistrate judge's analysis of the applicable case law.

When the district court rendered its decision, *Adams* had been construed by district courts in this circuit to preclude claims by inmates alleging prison officials retaliated against them for filing grievances. *See, e.g.*, *Pearson v. Simms*, 345 F. Supp. 2d 515, 520 (D. Md. 2003); *Boblett v. Angelone*, 942 F. Supp. 251, 255 (W.D. Va. 1996) (concluding that, under *Adams*, "a state grievance procedure does not confer any substantive right upon prison inmates," and holding "that retaliation for lodging complaints via . . . a grievance procedure does not state a [retaliation] claim . . . , which requires that the retaliation come in response to the exercise of a fundamental right"). Accordingly, we conclude that the magistrate judge's invocation of *Adams* and its progeny—and the district court's affirmance of the magistrate's report and recommendation—made clear that the court

intended its order to dispose of Martin's First Amendment retaliation claim on grounds that *Adams* foreclosed such claims as a matter of law. Therefore, because the district court's order "clearly preclude[d] amendment," we may review Martin's retaliation claim. *Cf. Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 630 (4th Cir. 2015) (holding that appellate panel lacked jurisdiction where district court's "grounds for dismissal in this case did not clearly preclude amendment").

Second, Martin's reformulation of his equal protection claim in his "Amended Complaint" marked his third attempt to state a claim for an equal protection violation. In particular, in addition to his original complaint and the "Amended Complaint" that Martin attached to his objection, Martin earlier in 2015 filed a substantially similar action in the same district court—alleging virtually identical facts—that was likewise dismissed without prejudice. *See Martin v. Duffy*, No. 4:15–cv–2104, 2015 WL 11121380 (D.S.C. Aug. 3, 2015) (affirming magistrate judge's report and recommendation and dismissing Martin's complaint without prejudice); *Martin v. Duffy*, No. 4:15–2104, 2015 WL 11121379, at *3 (D.S.C. June 30, 2015) (recommending that complaint be dismissed without prejudice because Martin "fail[ed] to plead facts that would support a plausible equal protection claim"); *see also Martin v. Duffy*, 623 F. App'x 104 (4th Cir. 2015) (per curiam) (concluding that deficiencies in Martin's complaint could be remedied by filing an amended complaint and dismissing appeal for lack of jurisdiction). Such repeated, ineffective attempts at amendment suggest that further amendment of the complaint would be futile. *See United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (finding that allowing plaintiff a third chance to amend would

11

prove futile where plaintiff had two opportunities to amend his complaint and there was no indication that he would be able to allege the necessary elements of a fraud claim). As district courts have thrice concluded that Martin has been unable to allege sufficient facts to establish a viable claim under the Equal Protection Clause, we find that Martin's pleading deficiency cannot be cured by amendment of his complaint. Accordingly, we maintain jurisdiction to review the dismissal of Martin's equal protection claim. *See Domino Sugar*, 10 F.3d at 1066.

Finally, regarding Martin's procedural due process claim stemming from his placement in segregation, the magistrate judge dismissed that claim *not* because Martin failed to allege sufficient facts to state a plausible claim, but because, as a matter of law, "South Carolina law confers no protected liberty interest upon . . . inmates from being classified or being placed in administrative segregation." J.A. 34. And the district court summarily affirmed the magistrate judge's report and recommendation, finding that the magistrate judge's report accurately summarized the applicable law and Martin's case. Therefore, by adopting the report and recommendation of the magistrate judge, the district court's order "clearly preclude[d] [Martin] from amending his complaint to correct any pleading inadequacy" relating to that claim. *See Goode*, 807 F.3d at 628. Thus, we may also review Martin's procedural due process claim.

In sum, the district court's dismissal of Martin's complaint without prejudice is a final and appealable order.

III.

12

On appeal, Martin argues that the district court erred in failing to address his First Amendment retaliation claim and in dismissing his remaining claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that a "court shall dismiss [a prisoner's] case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted." "The standards for reviewing a dismissal under [Section] 1915(e)(2)(B)(ii) are the same as those for reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6)." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). Therefore, we review a district court's dismissal of a complaint pursuant to Section 1915(e)(2)(B)(ii) de novo. *Moore v. Bennette*, 517 F.3d 717, 728 (4th Cir. 2008).

A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). Additionally, "[l]iberal construction of the pleadings is particularly appropriate where, as here, there is a pro se complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (alteration in original) (internal quotation marks omitted) (quoting *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978)). Nonetheless, "[w]e are not required . . . 'to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Veney*, 293 F.3d at 730 (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

13

With these principles in mind, we now turn to the question of whether Martin's complaint sufficiently alleged cognizable claims for (1) First Amendment retaliation, (2) denial of equal protection, and (3) denial of procedural due process regarding his placement in segregation.

A.

1.

Martin first complains that Duffy violated his First Amendment rights by "repris[ing], harass[ing,] and retaliat[ing] [against him] simply because [he] had attempted to informally resolve a grievance." J.A. 6. In order to state a colorable retaliation claim under Section 1983, a plaintiff "must allege that (1) []he engaged in protected First Amendment activity, (2) the defendant[] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant[’s] conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005); *see also Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)) (outlining substantially similar elements for a First Amendment retaliation cause of action by an inmate alleging retaliation for filing grievances against prison staff). Based on the facts Martin has alleged in his complaint, we conclude that Martin has stated a plausible First Amendment retaliation claim against Duffy.

First, Martin has sufficiently alleged that he engaged in protected First Amendment activity. *Constantine*, 411 F.3d at 499. "The First Amendment protects the right 'to petition the Government for a redress of grievances,'" *Kirby v. City of Elizabeth City*, 388

14

F.3d 440, 448 (4th Cir. 2004) (quoting U.S. Const. amend. I), and the Supreme Court has recognized that prisoners retain this constitutional right while they are incarcerated, *Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[P]risoners retain the constitutional right to petition the government for the redress of grievances . . . ."). In his complaint, Martin stated that he "filed an electronic kiosk message against [a prison sergeant] for inappropriate and unwanted touching 'battery.'" J.A. 4. Thus, by alleging that he filed a grievance against a sergeant for battery, Martin has sufficiently pleaded that he engaged in protected conduct.[2] *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) ("The filing of an inmate grievance is protected conduct."); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf.").

Second, Martin has adequately pleaded that Duffy's placement of Martin in segregation adversely affected his First Amendment rights. *Constantine*, 411 F.3d at 499. "[F]or purposes of a First Amendment retaliation claim under [Section] 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Id.* at 500

---

[2] Though, in his appellate briefs, Martin grounds his retaliation claim in his First Amendment right to freedom of speech, "we note that [Martin] also generally alleged a violation of the First Amendment" in claiming that Duffy retaliated against him for filing a grievance, and that "courts are obligated to 'liberally construe[]' pro se complaints, 'however inartfully pleaded.'" *Booker*, 855 F.3d at 540 (quoting *Erickson*, 551 U.S. at 94). Accordingly, we decline to constrain our analysis of Martin's claim to the Free Speech Clause of the First Amendment, but instead evaluate Martin's claim as properly "rooted in the First Amendment's Petition Clause." *Id.*

(quoting *Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004)). A plaintiff's "actual response to the retaliatory conduct" is not dispositive of the question of whether such action would likely deter a person of ordinary firmness. *Id.* Here, Martin alleged that, after he filed his grievance, Duffy "placed [him] inside of the administrative building's holding cell and placed [him] on segregation after she questioned [him] relentlessly about an informal resolution attempt of [the grievance he] had filed the day before." J.A. 4. Further, Martin alleged that he remained in segregation for 110 days before being allowed to return to the general prison population. Certainly, "placing an inmate in administrative segregation 'could deter a person of ordinary firmness from exercising his First Amendment rights.'" *Herron*, 203 F.3d at 416 (quoting *Dunham-Bey v. Holden*, 198 F.3d 244, 1999 WL 1023730, at *2 (6th Cir. Nov. 5, 1999) (unpublished table disposition)); *see also Watison*, 668 F.3d at 1115 (finding that placement in administrative segregation constitutes an adverse action); *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (finding that plaintiff's confinement in administrative segregation resulting in reduced access to amenities and programs would allow a fact finder to conclude that placement in administrative segregation amounted to an adverse action). Accordingly, Martin has sufficiently alleged that Duffy took adverse action against him by confining him in segregation.

Lastly, we find that Martin has likewise sufficiently alleged that Duffy's retaliatory act of placing him in segregation "was taken in response to the exercise of a constitutionally protected right." *Adams*, 40 F.3d at 75. Again, in his complaint, Martin alleged that, "[o]n the morning of September 12, 2014, [Duffy] placed [him in segregation] after she

16

questioned [him] relentlessly about an informal resolution attempt of [the grievance Martin] had filed the day before." J.A. 4. Martin's allegation that Duffy took this adverse action the day after he filed a grievance against a prison sergeant, "as an act of reprisal," satisfies the third element necessary to state a retaliation claim. J.A. 5; *see also Watison*, 668 F.3d at 1115 (finding that plaintiff alleged a sufficient connection between defendants' retaliatory actions and plaintiff's protected activity where plaintiff alleged defendants "took the[] adverse actions shortly after, and '[i]n retaliation' for, [plaintiff's] filing of grievances against [one of the defendants]" (second alteration in original)).

Accordingly, Martin has made out a prima facie claim of First Amendment retaliation, having alleged that he engaged in protected conduct by filing a grievance—*i.e.*, petitioning for a redress of grievances; that he was subsequently placed in segregation—a placement that might deter a person of ordinary firmness from filing grievances; and that his protected activity and Duffy's decision to place him in segregation were causally linked.

### 2.

Duffy argues that even if Martin pleaded sufficient facts to state a First Amendment retaliation claim, she is entitled to qualified immunity. Under Section 1915, courts are directed to "dismiss [a] case at any time if the court determines that . . . the action *or appeal* . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(iii) (emphasis added). Because we "may affirm the dismissal by the district court on the basis of any ground supported by the record even if it is not the basis relied upon by the district court," *Ostrzenski v. Seigel*, 177 F.3d 245, 253 (4th Cir.

17

1999), and because Martin's pleadings are adequately developed for us to decide the issue, we now turn to Duffy's qualified immunity defense.[3]

"[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017) (alteration in original) (internal quotation marks omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  In order for a plaintiff to overcome an official's qualified immunity defense, the plaintiff must demonstrate "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  An "official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 741 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Thus, in determining whether a right

---

[3] Martin contends that that it would be inappropriate for this Court to address Duffy's "improperly preserved affirmative defense" because "Duffy has waived her claim of qualified immunity by failing to raise it prior to appeal."  Appellant's Reply Br. at 24–25.  Martin's argument is simply unavailing.  Section 1915 prescribes *pre-answer review* of a complaint.  *See Michau v. Charleston County*, 434 F.3d 725, 727 (4th Cir. 2006) ("The magistrate judge conducted a pre-answer review of the complaints in accordance with the requirements of the PLRA and the [in forma pauperis] statute.").  Accordingly, Duffy cannot be faulted for failing to preserve her defense when she was not yet required to file an answer and has not done so.  Because Duffy has raised the defense on appeal, and such defense may be properly considered by this court under 28 U.S.C. § 1915(e)(2)(B)(iii), we will review Duffy's qualified immunity defense.

is clearly established, "a court does not need to find 'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Crouse*, 848 F.3d at 583 (quoting *al-Kidd*, 563 U.S. at 741).

Beginning with the first prong, as discussed above, *supra* Part III.A.1, "the facts alleged [by Martin] show [Duffy's] conduct violated a constitutional right," *Pearson*, 555 U.S. at 232 (internal quotation marks omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001))—namely, Martin's First Amendment right to be free from retaliation for filing a grievance. Thus, the only question that remains for this Court to decide is "whether the right at issue was 'clearly established' at the time of [Duffy's] alleged misconduct." *Id.*

In *Booker*, this Court held that an inmate's "right to file a prison grievance free from retaliation was clearly established under the First Amendment" at least as far back in time as 2010—the year in which the defendant's conduct in *Booker* took place. *See* 855 F.3d at 536, 545. Because Martin's First Amendment right to be free from retaliation by prison officials for filing a grievance was clearly established in 2010, *see id.* at 545, Duffy—whose alleged conduct took place in 2014—is not entitled to qualified immunity. Accordingly, we conclude that the district court erred in dismissing Martin's First Amendment retaliation claim.

B.

Martin next argues that the district court erred in dismissing his equal protection claim against Duffy. We disagree.

The Equal Protection Clause of the Fourteenth Amendment states that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S.

19

Const. amend. XIV, § 1. "The purpose of the [E]qual [P]rotection [C]lause . . . is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination." *King v. Rubenstein*, 825 F.3d 206, 220 (4th Cir. 2016) (internal quotation marks omitted) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Once the plaintiff makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* The plaintiff must plead sufficient facts to satisfy each of these requirements in order to state a cognizable equal protection claim. *Veney*, 293 F.3d at 731.

In his complaint, Martin alleged that the "unequal treatment" he had experienced "was the result of intentional and purposeful discrimination as an act of reprisal, harassment and retaliation *simply because [he] had attempted to informally resolve a grievance [that Duffy] did not like.*" J.A. 6 (emphasis added). And in his "Amended Complaint," Martin similarly alleged that "[t]he unequal treatment was the result of intentional and purposeful discrimination, a reprisal, an act of harassment and retaliation *simply because the plaintiff participated in the informal resolution of a grievance [Duffy] did not like*." J.A. 44 (emphasis added). Martin's claim that Duffy treated him differently than other inmates who had filed similar grievances, *in retaliation* for Martin exercising his right to petition for redress of grievances, is, at its core, a First Amendment retaliation

20

claim. *See Kirby*, 388 F.3d at 447 (rejecting police officer's claim that supervisors, by reprimanding officer after he testified against a co-worker in a grievance proceeding, denied officer equal protection because "[t]he claims based on the allegation that [the officer] was treated differently in retaliation for his speech are, at their core, free-speech retaliation claims"). Thus, as alleged, Martin's "equal protection claim is best characterized as a mere rewording of his First Amendment retaliation claim." *Edwards*, 178 F.3d at 250; *see supra* Part III.A.1. In such circumstances, "[a] pure or generic retaliation claim . . . does not implicate the Equal Protection Clause." *Edwards*, 178 F.3d at 250 (internal quotation marks omitted) (quoting *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997)).

In sum, because "all allegations in the complaint point to the conclusion that the [segregation] was in retaliation for [Martin's] exercise of his right[] to [petition] under the First Amendment," *id.*, we conclude that the district court did not err in dismissing Martin's equal protection claim.

## C.

Martin also appeals the dismissal of his procedural due process claim premised on his placement in segregation without a hearing. We again affirm the district court's dismissal of Martin's claim, albeit on different grounds than those relied upon by the district court. *See Ostrzenski*, 177 F.3d at 253.

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process [claim], a plaintiff must [first]

21

identify a protected liberty or property interest and [then] demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). Put differently, a prisoner claiming a violation of his right to procedural due process must show: (1) that there is a "state statute, regulation, or policy [that] creates such a liberty interest," and (2) that "the denial of such an interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* at 248–49 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). An inmate who fails to satisfy these two requirements "*cannot* 'invoke the procedural protections of the Due Process Clause.'" *Id.* at 248 (quoting *Meachum v. Fano*, 427 U.S. 215, 224 (1976)).

In his complaint, Martin alleged that he remained in segregation for 110 days without receiving a hearing. Because South Carolina Department of Corrections procedure mandated review of Martin's placement in pre-hearing detention or "segregation" within seventy-two hours of his initial placement and prescribed an initial detention of up to thirty days—with the option of a single thirty-day extension[4]—the complaint adequately alleged the existence of a state policy creating a protected liberty interest. *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015) ("[I]nmates must first establish that an interest in avoiding onerous or restrictive confinement conditions 'arise[s] from state policies or regulations'

---

[4] Although Duffy maintains that Martin's request for judicial notice of South Carolina Department of Corrections' procedure is an improper attempt to supplement the record, we may properly take judicial notice of this policy as a public record under Federal Rule of Evidence 201(d). *See Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

22

(e.g., a regulation mandating periodic review)." (second alteration in original) (quoting *Prieto*, 780 F.3d at 249)).

Turning to the second prong, we observe that "[w]hether confinement conditions are atypical and substantially harsh 'in relation to the ordinary incidents of prison life' is a 'necessarily . . . fact specific' comparative exercise.'" *Id.* (quoting *Beverati v. Smith*, 120 F.3d 500, 502, 503 (4th Cir. 1997)). Although Martin's complaint included the conclusory allegation that he "suffered an atypical and significant hardship" as the result of his placement in segregation, J.A. 6, the complaint did not identify any conditions Martin experienced that gave rise to his alleged hardship. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a plausible claim to relief]. . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Because Martin's complaint does not include any factual allegations establishing that he experienced conditions during his temporary placement in segregation that "were atypical and significantly harsh compared to [those of] the general population," *Incumaa*, 791 F.3d at 528–29 (noting that the general prison population is the "touchstone" in cases where inmate was sentenced to confinement in the general population and later transferred to security detention), Martin failed to allege sufficient facts to state a plausible due process claim.

IV.

For the reasons stated herein, the judgment of the district court is

23

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.*